IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| GWEN STEPHENS, an individual,<br><br>　　　　　　　Plaintiff,<br>v.<br><br>TELEPERFORMANCE USA, a French Corporation,<br><br>　　　　　　　Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT TELEPERFORMANCE USA'S CONVERTED MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 1:15-cv-00078<br>District Judge Jill N. Parrish |

## INTRODUCTION

Gwen Stephens brings this action against defendant Teleperformance USA ("TPUSA") claiming constructive discharge and damages under the Family and Medical Leave Act ("FMLA"). TPUSA moves to dismiss on the basis that Ms. Stephens has failed to state a claim. Specifically, it argues that Ms. Stephens' claims are barred by judicial estoppel and, alternatively, that she lacks standing to bring those claims. The court held a hearing on the motion on September 29, 2015 at which attorney Earl Webster represented Ms. Stephens and attorneys Richard J. Armstrong and Joseph V. Osmond represented TPUSA.

For the reasons set forth below, this motion is converted to one for summary judgment. The court rules that Ms. Stephens is judicially estopped from pursuing her claims. All of her current claims were "potential claims" that existed before and during her bankruptcy proceedings. Because she failed to disclose any of these claims to the bankruptcy court, she is judicially estopped from asserting them now. Accordingly, the court GRANTS TPUSA's converted motion for summary judgment (Docket 5).

**THIS MOTION IS CONVERTED TO A MOTION FOR SUMMARY JUDGMENT**

Before setting forth the facts, the court must resolve a procedural dispute. TPUSA filed its motion to dismiss Ms. Stephens' complaint pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. Ms. Stephens argues that since the court is considering matters outside the pleadings, this motion must be converted to a motion for summary judgment under Rule 56. *See Lowe v. Town of Fairland*, 143 F.3d 1378, 1381 (10th Cir. 1998) (explaining that a court has "broad discretion" to consider materials outside the complaint). Specifically, she argues that this motion requires the court to consider her bankruptcy documents, the EEOC filings, and her affidavit. TPUSA counters that the court may take judicial notice of all necessary documents. At oral argument, however, all counsel agreed that because the facts in this case are not in dispute for purposes of this motion, TPUSA's objection to converting the motion to one for summary judgment under Rule 56 is largely "academic." Therefore, the court need not decide whether taking judicial notice of the documents would be proper. Rather, the motion is converted to one for summary judgment.

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must show "that there is an absence of evidence to support the non-moving party's case." *Cellotex v. Catrett*, 477 U.S. 317, 325 (1986). In a summary judgment proceeding, the court must "view the facts and all reasonable inferences to be drawn therefrom in a light most favorable to the nonmoving party." *Eastman v. Union Pac. R.R. Co.*, 493 F.3d 1151, 1155–56 (10th Cir. 2007). Because the facts are not disputed for purposes of this motion, no further discovery is needed and the matter is ripe for summary judgment consideration.

**FACTUAL BACKGROUND**

Plaintiff, Gwen Stephens, alleges that she was discriminated against by her former employer TPUSA for using leave time under the FMLA to receive treatment for a sleep disorder. Ms. Stephens further alleges that she was demoted and denied the opportunity for promotion due to her medical condition and treatment.

Beginning in 2012, Ms. Stephens sought treatment for a sleep condition and was eventually diagnosed with narcolepsy. Ms. Stephens' physician recommended that she file FMLA paperwork with TPUSA and she did so. After three months TPUSA human resources cancelled her FMLA, believing it to be no longer valid. On December 7, 2012 Ms. Stephens resubmitted new FMLA paperwork to TPUSA.

In early 2013, TPUSA assigned Ms. Stephens to a supervisory role requiring her to work long hours on consecutive days covering both day and night shifts. As a result, Ms. Stephens' symptoms worsened. She became increasingly exhausted and experienced sleep attacks with greater frequency and intensity, forcing her to take additional leave time.

Ms. Stephens alleges that these long hours caused her condition to permanently worsen. She asserts she was demoted from her supervisory position because of the additional leave time she was forced to take. Around this same time, she had a confrontation with her supervisor during which she was told that "she was being watched because she had the potential to be an HR issue."

In February 2014, Ms. Stephens applied to be a supervisor for TPUSA but was denied the promotion. Ms. Stephens contends that this denial was due to her regular use leave under the FMLA. Later that month, Ms. Stephens wrote a letter to TPUSA expressing her concerns

regarding TPUSA's multiple FMLA-related actions and other grievances she had with the company.

On April 10, 2014, Ms. Stephens filed a "Voluntary Petition for Chapter 7 Bankruptcy." She was represented by an attorney in her bankruptcy proceedings. Ms. Stephens did not disclose any claims against TPUSA in her "Statement of Financial Affairs." She asserts that this was pursuant to the advice of her bankruptcy counsel.

On June 12, 2014, Ms. Stephens met with TPUSA's human resources department to correct her attendance record to reflect that her absences were FMLA absences. She was informed that she needed to make up all her missed time, including the FMLA time.

On June 19, 2014, Ms. Stephens filed a "Notice of Charge of Discrimination" with the U.S. Equal Employment Opportunity Commission. She alleged that she had been discriminated against based on her age and medical condition in violation of the Age Discrimination in Employment Act and the Americans with Disabilities Act. These claims were based on her demotion and denial of promotion.

Ms. Stephens never disclosed any of her claims to the bankruptcy court. She was granted a "no asset" discharge from her debts on July 30, 2014. The following day, Ms. Stephens had a "sleep attack" at work. She asserts that her supervisor refused her leave request and threatened to decrease her bonus pay. On August 1, 2014, Ms. Stephens reminded her supervisor of her FMLA-approved doctor's appointment that day. Her supervisor became upset and used "guilt tactics" to convince her to remain on her shift rather than use her FMLA time.

On August 12, 2014, Ms. Stephens again suffered several sleep attacks at work and requested to take FMLA leave, but her requests were denied. She was told she had to stay for a meeting that afternoon. On August 14, Ms. Stephens used additional FMLA time for part of her

shift. She was told by her supervisor that she would have to make up the time later and was made to feel guilty for requesting the leave time.

On August 20, 2014, Ms. Stephens terminated her employment with TPUSA, alleging it was a result of TPUSA's refusal to allow her to use her FMLA time and insisting that she make up her FMLA leave.

## DISCUSSION

### I. Ms. Stephens is Judicially Estopped from Asserting Her Claims

The doctrine of judicial estoppel prevents a party from asserting a position that would be inconsistent with a position previously asserted in prior litigation. This doctrine, as recognized by the Supreme Court, is meant "to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *New Hampshire v. Maine*, 532 U.S. 742, 749–50 (2001) (internal quotations omitted). In essence, "the rule is intended to prevent improper use of judicial machinery." *Id.* at 750 (internal quotations omitted). "Judicial estoppel is an equitable doctrine invoked by a court at its discretion." *Id.* The Tenth Circuit generally follows the three factors outlined by the Supreme Court to determine whether judicial estoppel should apply.

> First, a party's subsequent position must be "clearly inconsistent" with its former position. Next, a court should inquire whether the suspect party succeeded in persuading a court to accept that party's former position so that judicial acceptance of an inconsistent position would create the perception that either the first or second court was misled. Finally, the court should inquire whether the party seeking to assert an inconsistent position would gain an unfair advantage in the litigation if not estopped.

*Eastman v. Union Pac. R.R. Co.*, 493 F.3d 1151, 1156 (10th Cir. 2007) (quoting *New Hampshire*, 532 U.S. at 750–51) (internal quotations omitted). The court will consider each of these three factors in turn.

*A. The position adopted by Ms. Stephens in her bankruptcy proceeding is "clearly inconsistent" with her position in this litigation.*

The first factor for the court to consider is whether Ms. Stephens' position in this proceeding is "clearly inconsistent" with her position before the bankruptcy court. The position she took in the bankruptcy proceeding must be interpreted in light of relevant bankruptcy law. Specifically, the court must consider the impact of Ms. Stephens' failure to disclose her claims in the bankruptcy proceeding. Only then can the court determine if the prior position is "clearly inconsistent" with her current position.

During a chapter 7 bankruptcy, the debtor is required to disclose all of his or her assets, including "claims." *Eastman*, 493 F.3d at 1160. The bankruptcy statute defines "claim" as:

> (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or

> (B) right to an equitable remedy for breach of performance if such a breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

11 U.S.C. § 101(5). The Tenth Circuit has explained "[t]hat duty [to disclose] encompasses disclosure of all legal claims and causes of action, pending or *potential*, which a debtor *might have*" and includes "*contingent and unliquidated claims*." *Eastman*, 493 F.3d at 1159 (emphasis added). Black's Law Dictionary defines "potential" as an adjective meaning "[c]apable of coming into being." *Potential*, *Black's Law Dictionary* (10th ed. 2014). Likewise, the required "Schedule B–Personal Property" filed with the bankruptcy court asks whether the debtor has "[o]ther contingent and unliquidated claims *of every nature*." (Emphasis added.)

The broad definition and corresponding court interpretations make clear that the duty to disclose is an expansive one. It includes not only claims where every element of the cause of action has been met, but also those where enough of the elements have been met to give notice to

6

the debtor that a claim is "capable of coming into being." *Potential*, *Black's Law Dictionary* (10th ed. 2014). Accordingly, judicial estoppel is proper when the debtor in bankruptcy is aware, or should be aware, that a claim is likely to arise and fails to disclose this potential claim to the bankruptcy court.

It is undisputed that Ms. Stephens failed to disclose any claim against TPUSA to the bankruptcy court. In short, Ms. Stephens' previous position was that she had no claim against TPUSA, at least at the time of the bankruptcy. Additionally, given the expansive nature of the duty to disclose, Ms. Stephens' previous position was also that she had no contingent, unliquidated, unmatured, or potential claims.

Ms. Stephens' previous position in the bankruptcy court is "clearly inconsistent" with the position she adopts in this litigation. *Eastman*, 493 F.3d at 1156. In this litigation, Ms. Stephens alleges that her employer repeatedly violated her FMLA rights. These violations began in 2012 and continued until she quit on August 20, 2014. If Ms. Stephens' allegations are true, then a potential claim existed at the time she filed for bankruptcy on April 10, 2014. Additionally, some of her claims were sufficiently mature that she filed a "Notice of Charge of Discrimination" against TPUSA on June 19, 2014—a full month *before* her bankruptcy was finalized.[1]

The fact that all of the elements of Ms. Stephens' claim for constructive discharge arose after the bankruptcy does not render her current position consistent with her representations to the bankruptcy court. It is true that a claim of constructive discharge requires that the individual actually quit his or her employment, and Ms. Stephens did not quit her job with TPUSA until

---

[1] Although this grievance was based on the Americans with Disabilities Act and the Age Discrimination in Employment Act, it arose from the same set of operative facts as her current FMLA claims. And, in any event, enough of the alleged violations occurred prior to her filing for bankruptcy as to make her current position "clearly inconsistent" with her prior position.

7

three weeks after the discharge of her debts.[2] But, Ms. Stephens had "potential" claims against TPUSA prior to the discharge even if she did not know the exact legal basis for those claims. Those potential claims are closely enough related, in time and operative facts, to her current claims as to make her current position "clearly inconsistent" with the position she advanced before the bankruptcy court.

Ms. Stephens' position before the bankruptcy court was that she had no pending or potential claims against TPUSA. In contrast, her position before this court is that both before and during her bankruptcy, TPUSA violated her FMLA rights causing "irreversible," "permanent," and "incurable" injury. Indeed, she now seeks $721,000 in damages for these injuries. These positions are "clearly inconsistent," and weigh in favor of judicial estoppel.

*B. Ms. Stephens succeeded in persuading the bankruptcy court to adopt her previous position.*

The second factor for the court to consider is whether Ms. Stephens succeeded in persuading the bankruptcy court to adopt her previous position. This factor was intended to prevent "judicial acceptance of an inconsistent position in a later proceeding [from] creat[ing] the perception that either the first or the second court was misled." *Eastman*, 493 F.3d at 1157. A court's "concern is not so much with whether [the debtor] acted with some nefarious motive as it is with whether her actions led the bankruptcy court 'to accept her position, so that judicial acceptance of an inconsistent position in a later proceeding' would introduce the 'risk of inconsistent court determinations and thus pose a threat to judicial integrity.'" *Paup v. Gear Products*, 327 Fed. App'x 100, 107 (10th Cir. 2009) (quoting *New Hampshire*, 532 U.S. at 750–51).

---

[2] The timing of Ms. Stephens' decision to terminate her employment was, of course, in her control.

Ms. Stephens argues that she cannot be judicially estopped from pursuing her current claims since she "has not previously filed a cause of action regarding FMLA with any adjudicative body," and "[n]o ruling has been entered with respect to [her] FMLA claim." This argument, however, misunderstands the potential application of judicial estoppel to this case. The prior adjudication involved here is the bankruptcy—not an adjudication of the merits of her FMLA claims. As such, the relevant question is whether Ms. Stephens persuaded the bankruptcy court to adopt her previous position. And there is no question that she did.

Ms. Stephens received a "no asset" discharge at the conclusion of her bankruptcy. This no asset discharge is clear evidence that the bankruptcy court adopted Ms. Stephens' prior position. Specifically, it adopted her position that she had no pending or potential claims. Thus, this second factor weighs in favor of judicial estoppel.

*C. Ms. Stephens would gain an unfair advantage if not estopped from pursuing her claims in this court.*

The final factor for this court to consider is whether Ms. Stephens would gain an unfair advantage if not estopped from pursuing her current claims. The Tenth Circuit has held that debtors who failed to disclose their claims "derived a substantial unfair advantage because the bankruptcy trustee relied on their misrepresentations and determined that there were no assets available for distribution to the creditors." *Queen v. TA Operating, LLC*, 734 F.3d 1081, 1092 (10th Cir. 2013). "A debtor, once he files for bankruptcy, disrupts the flow of commerce and promptly benefits from an automatic stay. The debtor then receives the ultimate benefit of bankruptcy when he receives a discharge . . . [that] relieves the debtor of any obligation to pay outstanding debts." *Eastman*, 493 F.3d at 1159. "In exchange for these benefits, the bankruptcy code requires that [the debtor] fully and accurately disclose his financial status." *Id.* (internal

citation omitted). Thus, the debtor who receives "the benefit of discharge without ever having disclosed" pending suits is provided "an unfair advantage over his creditors." *Id.* at 1159–60.

Ms. Stephens was granted a no asset discharge on the basis of her filings with the bankruptcy court. She took full advantage of the automatic stay and obtained a full and complete discharge of her debts. Having failed to disclose her potential claims, it would be unfair for Ms. Stephens to now pursue them "without the risk that any of the award would go to [her] creditors." *Queen*, 734 F.3d at 1092. Accordingly, the final factor weighs in favor of applying estoppel.

*D. Ms. Stephen's additional defenses lack merit.*

Ms. Stephens offers two additional defenses in an attempt to avoid being judicially estopped. First, she claims that she was advised by her bankruptcy counsel that she need not disclose the FMLA claims. Next, she argues that the claim had no monetary value at the time and thus would have been abandoned by the trustee. Neither of these defenses prevents the application of judicial estoppel.

Incorrect advice from counsel is not a defense to judicial estoppel. The Tenth Circuit has held that a debtor's "assertion that he simply did not know better and his attorney 'blew it' is insufficient to withstand application of [judicial estoppel]."[3] *Eastman*, 493 F.3d at 1159. Rather, the "client is bound by the acts of her attorney and the remedy for bad legal advice rests in

---

[3] In contrast, judicial estoppel may be inappropriate where the failure to disclose was "inadvertent or mistaken." Inadvertence or mistake is generally only found when "the debtor either lacks knowledge of the undisclosed claims or has no motive for their concealment." *Queen*, 734 F.3d at 1093 (quoting *Eastman*, 493 F.3d at 1157). "Thus, where a debtor has both knowledge of the claims and a motive to conceal them, courts routinely, albeit at times *sub silentio*, infer deliberate manipulation." *Id.* Here, Ms. Stephens had both knowledge of the alleged FMLA violations and a clear motive to conceal those claims from the trustee.

malpractice litigation." *Id.* at 1157. (citing *Cannon-Stokes v. Potter*, 453 F.3d 446 (7th Cir. 2006)). Thus, it is no defense that Ms. Stephens may have been relying on the advice of counsel.

Ms. Stephens' second defense is that her claim had no value prior to her discharge and would therefore have automatically been abandoned by the trustee. It is true that "any property *scheduled* . . . not otherwise administered at the time of the closing of a case is abandoned to the debtor." 11 U.S.C. § 554(c) (emphasis added). But, "in order for property to be abandoned by operation of law pursuant to section 554(c), the debtor must formally schedule the property before the close of the case." *Vreugdenhill v. Navistar Int'l Transp. Corp.*, 950 F.2d 524, 526 (8th Cir. 1991). Likewise, it is not up to the debtor to determine which of her assets are valuable and which are not. Rather, she is required to completely and accurately list all assets (including pending and potential claims) so that the trustee may fully appraise the value of the estate and determine whether or not to pursue the claims. Thus, even assuming Ms. Stephens' claims had no monetary value,[4] judicial estoppel would still be appropriate.

## II. TPUSA's Argument that Ms. Stephens Lacks Standing is Actually an Argument that She is Not the Real Party in Interest and Need Not Be Reached

TPUSA's concluding argument in its brief is that Ms. Stephens lacks standing to assert her claims because they actually belong to the bankruptcy trustee. This argument, however, confuses the constitutional requirement of standing with the requirement that the litigation be prosecuted in the name of the real party in interest. *See Smith v. United Parcel Serv.*, 578 Fed. App'x 755, 758 (10th Cir. 2014) (holding that a debtor's employment discrimination claims "satisfy the minimum constitutional requirements for standing" even though he was judicially estopped from pursuing them); *K-B Trucking Co. v. Riss Int'l. Corp.*, 763 F.2d 1148, 1154 n.7

---

[4] It should be noted that the Ms. Stephens' complaint *does* seek monetary damages for the injuries caused by TPUSA's FMLA violations, including those which occurred before the bankruptcy.

(10th Cir. 2004) (explaining the difference between standing and real party in interest analysis); *FDIC v. Bachman*, 894 F.2d 1233, 1235–36 (10th Cir. 1990) (distinguishing between standing and real party in interest). TPUSA's counsel admitted at oral argument that TPUSA's standing argument was really a real party in interest argument. Accordingly, Ms. Stephens' constitutional standing is not at issue. Having already determined that Ms. Stephens is judicially estopped from bringing her current claims, the court need not reach the issue of whether Ms. Stephens is the real party in interest.

## CONCLUSION

Ms. Stephens represented to the bankruptcy court that she did not have any "pending or potential" claims. But she now seeks to recover $721,000 for injuries that occurred, at least in large part, before her bankruptcy. The integrity of the judicial system requires that Ms. Stephens be judicially estopped from pursuing her claims in this court. Accordingly, the court hereby GRANTS TPUSA's converted motion for summary judgment. (Docket 5).

Signed October 13, 2015.

BY THE COURT

Jill N. Parrish
United States District Court Judge